UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| LLOYD KELLEY §<br>    Plaintiff, §<br>§<br>VS. §<br>§<br>JOE SAENZ §<br>JOSEPH C. HIBBARD §<br>JOHN BRANNON §<br>WAYNE DOLCEFINO §<br>CHRISTOPHER RAMEY §<br>SCOTT BREITENWISCHER §<br>MARC SHERRIN §<br>SALVADOR BALLESTEROS §<br>    Defendants. § | Civil Action No. 4:22-cv-2175<br><br>**JURY REQUESTED** |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff Lloyd Kelley complaining of Joe Saenz, Joseph Hibbard, John Brannon, Christopher Ramey, Scott Breitenwischer, Wayne Dolcefino, Marc Sherrin, Salvador Ballesteros and ("Defendants") and would show the Court as follows:

### Summary

This is an action to enforce the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, and the Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02).

1

1. Defendants have violated the law : (1) Intentionally intercepting, attempting to intercept, or having someone intercept a wire, oral, or electronic communication; (2) Intentionally disclosing or attempting to disclose to another person the contents of an illegally obtained wire, oral, or electronic communication; and/or (3) Intentionally using or attempting to use the contents of an illegally obtained wire, oral, or electronic communication.

2. Certain Defendants also defamed Plaintiff by making untrue accusations that Plaintiff engaged in criminal conduct.

## **PARTIES**

3. Lloyd Kelley is a citizen of Texas.

4. Defendants' names, residences and address for service of process is set forth below:

    1. Joe Saenz
       8416 Sea Ash Circle
       Round Rock, TX. 78664-9769

    2. Joseph Hibbard
       2970 CR 210
       Nacogdoches, Tx. 75965

    3. John S. Brannon
       4801 Woodway Dr., Suite 315-W
       Houston, Texas 77056

    4. Christopher Ramey
       215 S. 4th St.
       Wallis, Tx. 77485

    5. Scott Breitenwischer

      215 S. 4th St.
      Wallis, Tx. 77485

6. Wayne Dolcefino
   3701 Kirby, Ste 560
   Houston, Texas 77098

7. Marc Sherrin
   1025 Scarlett Dr.
   Lucas, Texas 75002

8. Salvador Ballesteros
   545 Woodbrook Trail
   Buda, Texas 78610

## JURISDICTION

5. The Court has jurisdiction as claims in this suit are based upon a federal question; the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521.

6. This Court has jurisdiction under 28 U.S.C. Section 1332 as the claims are between citizens of different states. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## STATEMENT OF ECPA CLAIM

7. Plaintiff represents clients including Jetall Companies, 2017 Yale Development, LLC and Ali Choudhri ("Clients"). A former employee of Plaintiff's Clients, Chris Wyatt, stole corporate files including electronic communications and secretly recorded oral phone communications between Plaintiff and Ali Choudhri. Defendants through their lawyers Christopher

Ramey and Scott Breitenwischer received the illegal recordings of Plaintiff's conversations with Plaintiff's Clients and then proceeded to publish them continuously in an attempt to "launder" them.

8. Prior to Defendants' lawyers obtaining a copy of said tapes, Clients had sued Chris Wyatt and a restraining order regarding the confidential company information had been entered. Upon information and belief Defendants' lawyers were aware of said restraining order and were aware that Chris Wyatt was a former employee of Clients and that Chris Wyatt was not a participant on any of the conversations. Further, Defendants' lawyers knew that Clients had denied any consent to record said conversations. Defendants' lawyers knew Plaintiff was the lawyer for Clients. engaged in years of litigation with Plaintiff as the lawyer representing Clients.

9. It was a violation of federal and state law for Chris Wyatt to record and then disseminate the pone conversations between Plaintiff and his Clients. Under state law, the penalty is a felony.

10. Defendants through their lawyers have repeatedly disclosed or attempted to disclose to other persons the contents of an illegally obtained wire, oral, or electronic communication. Such acts violate the federal and state law. The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521 prohibits the intentionally disclosing or attempting to disclose to another person the

contents of an illegally obtained wire, oral, or electronic communication.

11. Defendants were warned that the tapes of the private communications between Plaintiff and Choudhri were unlawfully obtained. However, Defendants intentionally ignored the state court litigation and ignored the fact that Wyatt is nowhere on the tapes thus not a party to any of the conversations. Defendants were aware that Wyatt was an employee of Jetall and as such owed a fiduciary duty to that company. Defendants aided and abetted the breach of Wyatt's fiduciary duty by publishing the emails and private conversations publicly.

12. Such acts are criminal in Texas and Texas provides for civil relief under Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02).

13. 18 U.S. § 2515 provides that whenever any wire or oral has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority… of a State or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

14. Plaintiff seeks a declaration that the Wyatt stolen electronic information and

illegally taped conversations may not be used by any of the Defendants or their agents, or agencies or used in any court proceeding or other government or quasi-government proceeding.  Plaintiff seeks damages for each use of the unlawfully obtained material against each Defendant for each use or attempted use.

15. Unless Defendants and their agents are restrained, they will continue to violate the law.

16. Defendants willfully and intentionally interfered with valid contracts between Plaintiff and David Alvarez and D&A Alvarez Group, LLC (hereinafter "Alvarez") through their agents Chris Ramey and Scott Breitenwischer.  While Plaintiff represented Alvarez, Defendants' agents tortiously interfered with the attorney fee agreement Plaintiff had with Alvarez.

17. Defendants defamed Plaintiff by direct false accusations and by innuendo.

## TORTIOUS INTERFERENCE WITH A CONTRACT AND PROSPECTIVE BUSINESS RELATIONS

18. Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

19. Pleading additionally, or in the alternative, to recover for tortious interference with an existing contract, Plaintiff had existing contract with Alvarez

constituting a valid contract subject to interference; (2) Defendants committed willful and intentional acts of interference, including deliberately inducing Alvarez to breach that contract; (3) these acts and others were the proximate cause of the Plaintiff's damages; and (4) that actual damage or loss occurred.

20. In the instant case, Defendants willfully and intentionally interfered with valid contracts between Plaintiff and David Alvarez and D&A Alvarez Group, LLC (hereinafter "Alvarez") through their agents Chris Ramey and Scott Breitenwischer. While Plaintiff represented Alvarez, Defendants' agents tortiously interfered with the attorney fee agreement Plaintiff had with Alvarez. Defendants caused Alvarez to breach that agreement and to secretly be directed by Ramey while he employed Plaintiff. As a result, Alvarez did not appeal and instead began to take bizzare actions such as begging to be sued individually for torts or confessing to crimes as alleged by Ramey. Defendants forced Alvarez to sign a false confession in which Alvarez admits to criminal acts as alleged by Defendants. Upon information and belief, Defendants through their agents bribed Alvarez's other lawyer, Tim Trickey, who was allowed to take proceeds of money that Defendants and their agents were denying ever existed. In return Trickey and Ramey entered into a conspiracy to work behind Plaintiff's back while Plaintiff was encouraged to

continue working as Alvarez's lawyer. Plaintiff was falsely induced to continue working with the end goal of Defendants and Alvarez to set Plaintiff up as a target in which Defendants agreed not to collect on a judgment and forced Alvarez to pursue Plaintiff on bogus claims.

21. Defendants acts through their agents made performance impossible or more burdensome, difficult or expensive, which was the proximate cause of Plaintiff's actual damages and loss. They also interfered with Plaintiff's representation of his client who then filed a false confession in federal court.

## DEFAMATION

22. Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

23. Defendants published false statements about Plaintiff (ii) that was defamatory (iii) while acting with either actual malice, or negligence, regarding the truth of the statement.

24. Defendants through their agents published false statements about Plaintiff (ii) that was defamatory (iii) while acting with either actual malice, or negligence, regarding the truth of the statement.

25. Defendants claimed that Plaintiff "personally causing 2017 Yale's defaults on Steadfast's loans and everything that has happened since. All claims and defenses of these sham entities in all of these cases were predicated upon this

8

fraud. This conduct is a fraud on all of these Courts, that Mrs. Fraga, and likely other attorneys, may have wrongfully accepted percentage interests in 2017 Yale or the trust, to induce their work for Plaintiff in a "fraudulent enterprise."

26. Defendants accused Plaintiff of being involved in a "fraudulent enterprise."

27. Defendants accused Plaintiff of criminal conduct and of engaging in conduct constituting a felony.

28. Defendants agent spoke to Wayne Dolcefino and made similar accusations on behalf of Defendants which included aiding Dolcefino's slander-for-hire blogs.

29. Defendants defamed Kelley by innuendo.  Defendants accused Plaintiff of being a "pretend" lawyer and making false statements to courts.

30. Defendants accused Plaintiff of committing fraud by causing them to enter into the April 4, 2017 transaction knowing Plaintiff was not involved in that transaction at all.

31. Defendants and their agents knew Plaintiff had nothing to do with the April 4, 2017 transaction and never spoke to Defendants agents Marc Sherrin, Matt Aycock or any of Defendants other agents before that transaction upon which any of them could base a fraud claim.

32. Defendants accused Plaintiff of a fraudulent transfer of assets that

Defendants assert were owned by you them in July2019 when Defendants were aware that they sold their Note and Deed of Trust in January 2018 to Alvarez and after that date did not own the Property at 829 Yale or the Note or Deed of Trust.

33. Defendants have made sworn statements that they have personal knowledge of the matters they were factually asserting such as their claim of fraud or fraudulent transfer and yet none of them ever spoke to Plaintiff except in a taped deposition. Two falsely swore they were deposed and abused by Plaintiff when they had never been deposed at all.  They were never in Plaintiff's presence at any time during the case.  Defendants never attended any of the discussions regarding the April 4, 2017 deal with Plaintiff, they never attended hearings or the trial or any or anything else.  It is impossible for Plaintiff to have made any representations to either of them.

34. Defendants' statements and false innuendo are false and defamatory.

35. Defendants understood what they were doing when on January 30, 2018, they sold their "collateral" to D&A Alvarez Group, LLC.  The "collateral" they are referring to in their false statements regarding Plaintiff is the April 4th 2017 Note and Deed of Trust to 2017 Yale.  The January 31, 2018 transaction documents were long and detailed.  Having read the documents thoroughly, Defendants claim they understood them and had counsel when

they elected to sell their "collateral" to D&A Alvarez Group company. They elected not get a personal guarantee from Mr. Alvarez. Defendants elected to finance Mr. Alvarez's purchase of the "collateral" by loaning D&A Alvarez Group, LLC the purchase price. Mr. Alvarez through his company thus owned the "collateral." Defendants did not own the "collateral" after January 31, 2018. Defendants' only "collateral" after January 31, 2018 was in UCC Chapter 9 security interest in the underlying instruments themselves. Defendants did not have a Deed of Trust ruing to the property. The original Note and Deed of Trust were sold to D&A Alvarez Group, LLC as of January 31, 2018. Thus, as of January 31, 2018, Defendants did not have any collateral in the "property" located at 829 Yale. Their security, as it states on their transaction documents, says their security is in commercial paper. It is undisputed that Defendants never foreclosed on their security interest in the underlying commercial paper.

36. Then, Defendants executed an Allonge and attached it to the D&A Alvarez Group Note which had the legal effect of endorsing that note back to its maker, D&A Alvarez Group. Surely Defendants knew what an "Allonge" is and its effect as they were represented by numerous lawyers. Defendants obtained a judgment that the January 31, 2018 "Loan Documents" as they call them are valid and enforceable. As such, there is nothing to set them aside.

Defendants obtained a breach of the January 31, 2019 agreement against D&A Alvarez Group, LLC and getting a "money judgment" for $9 million against D&A Alvarez Group, LLC.

37. Defendants were made aware by record filings that in July 2018, as owner of the April 4,2017 Note and Deed of Trust, D&A Alvarez Group entered into a Rule 11 Settlement Agreement with the parties suing him and released all such obligations.

38. Plaintiff's client at that time was Terry Fisher who was a party to that Rule 11 Agreement. That Rule 11 Agreement was filed with the 190th District Court and put Defendants and others on notice it had been released. In January 2019, Defendants deposed Mr. Alvarez about releasing the April 4th note and lien. Defendants were aware at that time that Mr. Alavarez had released the Note and Deed of Trust. Defendants filed a summary judgment, MSJ #5, making a claim that very Rule 11 provided him a release as well.

39. In July 2019, a year after Mr. Alvarez executed the Rule 11, Mr. Alvarez executed and had filed a recordable release of lien as to the property in accordance with the Rule 11 settlement agreement.

40. As such, Defendants as sophisticated real estate investors knew that after January 30, 2018, there was no "collateral" for Defendants' to claim as to any real property associated with 829 Yale. After July 2018, there were no liens

on the property associated with any deed of trust. After July 2019, the Alvarez release was public record. None of this was fraudulent.

41. All of Defendants' claims of fraud and fraudulent transfer were dismissed with prejudice by the October 2019 judgment.

42. Defendants make false claims that Plaintiff lied to a court under oath however none of the Defendants ever observed or heard Plaintiff say anything to any court. Defendants were never in the court room and has no personal knowledge of any of the proceedings except his deposition. Instead, the transcript record reveals that Defendants' agent, Mr. Ramey, falsely told the Court that Plaintiff had violated the temporary injunction. When the Court examined the order, it determined no violation had occurred and never proceeded with any hearing. In a subsequent hearing, the 190th Court has admonished Defendants' agent Mr. Ramey about making such misstatements about the proceedings. Defendants continue to falsely state what is objective on the record thereby defaming Plaintiff.

43. Defendant Brannon defamed Plaintiff by comparing Plaintiff to Deshaun Watson, the NFL player accused of sexual improprieties during massage sessions with 25 women.

44. Dolcefino defamed Plaintiff by claiming Plaintiff "setting up a fake trust to hide secret ownership" and Plaintiff "committed bribery to keep it secret" and

a "shocking betrayal of a number of judges" as well as other false statements and innuendo in his July-August 2021 paid-for-hire-blog cast.

45. Ramey drafted over a hundred pages of false and defamatory allegations against Plaintiff and then sent them to the State Bar of Texas and to Dolcefino and others as part of a smear campaign.

46. Defendants made the false statement that

    An arbitration award on file in a 2012 case, 2012-27197A, was recently made public. Exhibit 184. The arbitration panel found that Kelley, Fraga, Choudhri, Parker, Pierce, and the other related cast of characters committed fraud in a very similar pattern on another property…

47. Defendants labeled Plaintiff a "criminal" and claimed he was part of a "**Yale Criminal Enterprise.**" Defendants published the following false defamatory accusations accusing Plaintiff of the following:

    Defendants claimed Plaintiff had engaged in "numerous state and federal felonies" and were "effectively "taking the fifth." Defendants claimed Plaintiff conspired to commit seventeen distinct scams" that were "all designed to steal the money loaned by [Defendants] and title to [Defendants]'s collateral, on fraudulent pretenses."

    Accused Plaintiff of "fraudulently induced and extorted Steadfast into a loan workout, for more funds."

    Accused Plaintiff of "stealing the lenders' money and invested it to bribe others to participate in additional schemes against the lenders and property.

14

> Accused Plaintiff of "fabricated sham entities to engage in interstate transactions, the Enterprise secretly owning or controlling all parties to all sides of these fake transactions."
>
> Accused Plaintiff of "fabricated fake tax liens to try to foreclose on the legitimate lenders. They recorded fraudulent releases of Steadfast's liens, created sham entities to pose as bona fide purchasers, and made illegal transfers of the collateral, all in furtherance of the Enterprise."
>
> Accused Plaintiff of "creating a fraudulent title abstracts omitting Steadfast's prior recorded Loan Documents to attempt insurance fraud and use the abstracts to support frivolous pleadings in vexatious litigation."
>
> Accused Plaintiff of "bribed witnesses to perjure themselves, bribed landmen, title companies, and other attorneys to participate in their schemes."

## **CONSPIRACY**

48. Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

49. Pleading additionally, or in the alternative, Plaintiff would show that each Defendant was a member of a combination of two or more persons, the object of which was to accomplish an unlawful purpose, or a lawful purpose by unlawful means, the members had a meeting of the minds on the object or course of action, one of the members committed an unlawful, overt act to further the object or course of action, and the Plaintiff suffered injury as a proximate result of the wrongful act.

50. Plaintiff re-alleges and by reference incorporate all allegations in the

preceding paragraphs.

## AIDING AND ABETTING

51. Pleading additionally, or in the alternative, Plaintiff would show, the primary actors committed torts, the Defendants had knowledge that the primary actor's conduct constituted a tort, the Defendants had the intent to assist the primary actor in committing the tort, the Defendants gave the primary actor assistance or encouragement, and the Defendants' assistance or encouragement was a substantial factor in causing the tort.

## PRINCIPAL-AGENT LIABILITY

52. Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

53. Pleading additionally, or in the alternative, Plaintiff would show that Defendants were acting as agent for each other in making representations and signing agreements with Plaintiff.

## CONDITIONS PRECEDENT AND DAMAGES

54. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred. As a result of Defendants' aforementioned actions and misconduct, Plaintiff has suffered damages in excess of the minimum jurisdictional limits of this Court. Defendants' conduct has directly resulted in

the damages to Plaintiff described in this Petition.

55. Plaintiff seeks recovery of reasonable attorney's fees pursuant to enforce the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, and the Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02) the Texas statutory regime set forth above, and otherwise as allowed at law or in equity and as otherwise plead for herein.

## APPLICATION FOR INJUNCTIVE RELIEF

56. Plaintiff moves this court to issue an injunction and permanently restrain and enjoin Defendants, including their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them, from violating the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, and the Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02). Defendants and their agents should be immediately enjoined from disclosing or attempting to disclose to another person the contents of any wire, oral, or electronic communication; and/or (3) using or attempting to use the contents of any wire, oral, or electronic communication between Plaintiff and his Clients.

57. The statutes provide for injunctive relief.

## PRAYER

WHEREFORE, Plaintiff prays that the Court enjoin Defendants from violating the law and from disclosing or attempting to disclose to another person the contents of any wire, oral, or electronic communication; and/or using or attempting to use the contents of any wire, oral, or electronic communication between Plaintiff and his Clients and that Plaintiff be awarded damages, punitive damages and attorney's fees as provided by law and for such other relief that Plaintiff may show himself entitled.

Plaintiff prays that the Court enter judgment in their favor and against Defendants and that Defendants have judgment of and against them for the following relief:

1. That the Court Issue a permanent injunction as plead for herein;

2. All actual, compensatory, and consequential damages of Plaintiff proven and supported by the Pleadings;

3. All punitive, statutory and exemplary damages and remedies against Defendants proven and supported by the Pleadings;

4. Prejudgment and post judgment interest as provided by law;

5. Attorney's fees;

6. Costs of suit;

7. Such other and further relief at law or in equity to which Plaintiff may be justly entitled.

DATED: July 1, 2022.

Respectfully submitted,

/s/ *Lloyd E. Kelley*
LLOYD E. KELLEY
State Bar No. 11203180
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: 281-492-7766
Telecopier: 281-652-5973
kelley@lloydekelley.com
Pro-se