United States District Court
Southern District of Texas

**ENTERED**

September 25, 2025

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LLOYD E. KELLEY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-2175 |
| | § | |
| JOE SAENZ, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lloyd E. Kelley, a Texas attorney proceeding *pro se*, filed this lawsuit against defendants Joe Saenz, Joseph Hibbard, Christopher Ramey, Scott Breitenwischer, Wayne Dolcefino, Marc Sherrin, and Salvador Ballesteros.[1] He raises claims for enforcement of the federal Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510–2521, the Texas Wiretap Act ("TWA"), TEX. CIV. PRAC. & REM. CODE § 123.002 *et seq.* (civil enforcement of Texas Penal Code § 16.02), tortious interference, defamation, and civil conspiracy. He seeks damages, a declaratory judgment, and injunctive relief.

### I. 28 U.S.C. § 1367

Plaintiff pleads federal question jurisdiction under 28 U.S.C. § 1331 as to his claims for enforcement of the ECPA. He pleads supplemental jurisdiction under 28 U.S.C. § 1367

---

[1] Plaintiff dismissed his claims against an additional defendant, John Brannon, on November 4, 2022.

as to his state law claims for violation of the TWA, tortious interference, defamation, and civil conspiracy.

Section 1367, "Supplemental Jurisdiction," provides as follows:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction *over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a), emphasis added. Notwithstanding the above, § 1367(c) allows a court to decline to exercise supplemental jurisdiction over a state law claim under subsection (a) if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c).

In pleading his ECPA claims – the claims over which this Court has original jurisdiction – and his TWA claims, plaintiff alleges as follows:

7.    A former employee of Plaintiff's Clients, Chris Wyatt, stole corporate files including electronic communications and secretly recorded oral phone communications between Plaintiff and Ali Choudhri. Defendants through their lawyers Christopher Ramey and Scott Breitenwischer received the illegal recordings of Plaintiff's conversations with Plaintiff's Clients and then proceeded to publish them continuously in an attempt to "launder" them.

8.    Prior to Defendants' lawyers obtaining a copy of said tapes, Clients had sued Chris Wyatt and a restraining order regarding the confidential company information had been entered. Upon information and belief Defendants' lawyers were aware of said restraining order and were aware that Chris Wyatt was a former employee of Clients and that Chris Wyatt was not a participant on any of the conversations. Further, Defendants' lawyers knew that Clients had denied any consent to record said conversations. Defendants' lawyers

knew Plaintiff was the lawyer for Clients. engaged in years of litigation with Plaintiff as the lawyer representing Clients.

9.      It was a violation of federal and state law for Chris Wyatt to record and then disseminate the pone [*sic*] conversations between Plaintiff and his Clients. Under state law, the penalty is a felony.

10.      Defendants through their lawyers have repeatedly disclosed or attempted to disclose to other persons the contents of an illegally obtained wire, oral, or electronic communication. Such acts violate the federal and state law.

11.      Defendants were warned that the tapes of the private communications between Plaintiff and Choudhri were unlawfully obtained. However, Defendants intentionally ignored the state court litigation and ignored the fact that Wyatt is nowhere on the tapes thus not a party to any of the conversations.

*    *    *

14.      Plaintiff seeks a declaration that the Wyatt stolen electronic information and illegally taped conversations may not be used by any of the Defendants or their agents, or agencies or used in any court proceeding or other government or quasi-government proceeding. Plaintiff seeks damages for each use of the unlawfully obtained material against each Defendant for each use or attempted use.

(Docket Entry No. 1.)

In pleading his state law claims against the defendants for tortious interference, plaintiff alleges as follows:

19.      Pleading additionally, or in the alternative, to recover for tortious interference with an existing contract, Plaintiff had existing contract with Alvarez constituting a valid contract subject to interference; (2) Defendants committed willful and intentional acts of interference, including deliberately inducing Alvarez to breach that contract; (3) these acts and others were the proximate cause of the Plaintiff's damages; and (4) that actual damage or loss occurred.

3

20.    In the instant case, Defendants willfully and intentionally interfered with valid contracts between Plaintiff and David Alvarez and D&A Alvarez Group, LLC (hereinafter "Alvarez") through their agents Chris Ramey and Scott Breitenwischer. While Plaintiff represented Alvarez, Defendants' agents tortiously interfered with the attorney fee agreement Plaintiff had with Alvarez. Defendants caused Alvarez to breach that agreement and to secretly be directed by Ramey while he employed Plaintiff. As a result, Alvarez did not appeal and instead began to take bizzare [sic] actions such as begging to be sued individually for torts or confessing to crimes as alleged by Ramey. Defendants forced Alvarez to sign a false confession in which Alvarez admits to criminal acts as alleged by Defendants. Upon information and belief, Defendants through their agents bribed Alvarez's other lawyer, Tim Trickey, who was allowed to take proceeds of money that Defendants and their agents were denying ever existed. In return Trickey and Ramey entered into a conspiracy to work behind Plaintiff's back while Plaintiff was encouraged to continue working as Alvarez's lawyer. Plaintiff was falsely induced to continue working with the end goal of Defendants and Alvarez to set Plaintiff up as a target in which Defendants agreed not to collect on a judgment and forced Alvarez to pursue Plaintiff on bogus claims.

21.    Defendants [sic] acts through their agents made performance impossible or more burdensome, difficult or expensive, which was the proximate cause of Plaintiff's actual damages and loss. They also interfered with Plaintiff's representation of his client who then filed a false confession in federal court.

(Docket Entry No. 1.)

It is clear to the Court that plaintiff's state law claims for tortious interference are not so related to his ECPA claims that they form part of the same case or controversy. To the contrary, plaintiff's ECPA claims and tortious interference claims are factually and legally unrelated. Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for tortious interference.

Further, in pleading his claims against the defendants for defamation, plaintiff alleges as follows:

4

23.    Defendants published false statements about Plaintiff (ii) that was defamatory (iii) while acting with either actual malice, or negligence, regarding the truth of the statement.

24.    Defendants through their agents published false statements about Plaintiff (ii) that was defamatory (iii) while acting with either actual malice, or negligence, regarding the truth of the statement.

25.    Defendants claimed that Plaintiff " [*sic*] personally causing 2017 Yale's defaults on Steadfast's loans and everything that has happened since. All claims and defenses of these sham entities in all of these cases were predicated upon this fraud. This conduct is a fraud on all of these Courts, that Mrs. Fraga, and likely other attorneys, may have wrongfully accepted percentage interests in 2017 Yale or the trust, to induce their work for Plaintiff in a "fraudulent enterprise."

26.    Defendants accused Plaintiff of being involved in a "fraudulent enterprise."

27.    Defendants accused Plaintiff of criminal conduct and of engaging in conduct constituting a felony.

28.    Defendants [*sic*] agent spoke to Wayne Dolcefino and made similar accusations on behalf of Defendants which included aiding Dolcefino's slander-for-hire blogs.

29.    Defendants defamed Kelley by innuendo. Defendants accused Plaintiff of being a "pretend" lawyer and making false statements to courts.

30.    Defendants accused Plaintiff of committing fraud by causing them to enter into the April 4, 2017 transaction knowing Plaintiff was not involved in that transaction at all.

31.    Defendants and their agents knew Plaintiff had nothing to do with the April 4, 2017 transaction and never spoke to Defendants agents Marc Sherrin, Matt Aycock or any of Defendants other agents before that transaction upon which any of them could base a fraud claim.

32.    Defendants accused Plaintiff of a fraudulent transfer of assets that Defendants assert were owned by you [*sic*] them in July 2019 when

5

Defendants were aware that they sold their Note and Deed of Trust in January 2018 to Alvarez and after that date did not own the Property at 829 Yale or the Note or Deed of Trust.

33.     Defendants have made sworn statements that they have personal knowledge of the matters they were factually asserting such as their claim of fraud or fraudulent transfer and yet none of them ever spoke to Plaintiff except in a taped deposition. Two falsely swore they were deposed and abused by Plaintiff when they had never been deposed at all. They were never in Plaintiff's presence at any time during the case. Defendants never attended any of the discussions regarding the April 4, 2017 deal with Plaintiff, they never attended hearings or the trial or any or anything else. It is impossible for Plaintiff to have made any representations to either of them.

34.     Defendants' statements and false innuendo are false and defamatory.

35.     Defendants understood what they were doing when on January 30, 2018, they sold their "collateral" to D&A Alvarez Group, LLC. The "collateral" they are referring to in their false statements regarding Plaintiff is the April 4th 2017 Note and Deed of Trust to 2017 Yale. The January 31, 2018 transaction documents were long and detailed. Having read the documents thoroughly, Defendants claim they understood them and had counsel when they elected to sell their "collateral" to D&A Alvarez Group company. They elected not get a personal guarantee from Mr. Alvarez. Defendants elected to finance Mr. Alvarez's purchase of the "collateral" by loaning D&A Alvarez Group, LLC the purchase price. Mr. Alvarez through his company thus owned the "collateral." Defendants did not own the "collateral" after January 31, 2018. Defendants' only "collateral" after January 31, 2018 was in UCC Chapter 9 security interest in the underlying instruments themselves. Defendants did not have a Deed of Trust ruing [*sic*] to the property. The original Note and Deed of Trust were sold to D&A Alvarez Group, LLC as of January 31, 2018. Thus, as of January 31, 2018, Defendants did not have any collateral in the "property" located at 829 Yale. Their security, as it states on their transaction documents, says their security is in commercial paper. It is undisputed that Defendants never foreclosed on their security interest in the underlying commercial paper.

36.     Then, Defendants executed an Allonge and attached it to the D&A Alvarez Group Note which had the legal effect of endorsing that note back to its maker, D&A Alvarez Group. Surely Defendants knew what an "Allonge"

is and its effect as they were represented by numerous lawyers. Defendants obtained a judgment that the January 31, 2018 "Loan Documents" as they call them are valid and enforceable. As such, there is nothing to set them aside. Defendants obtained a breach of the January 31, 2019 agreement against D&A Alvarez Group, LLC and getting a "money judgment" for $9 million against D&A Alvarez Group, LLC.

37.    Defendants were made aware by record filings that in July 2018, as owner of the April 4, 2017 Note and Deed of Trust, D&A Alvarez Group entered into a Rule 11 Settlement Agreement with the parties suing him and released all such obligations.

38.    Plaintiff's client at that time was Terry Fisher who was a party to that Rule 11 Agreement. That Rule 11 Agreement was filed with the 190th District Court and put Defendants and others on notice it had been released. In January 2019, Defendants deposed Mr. Alvarez about releasing the April 4th note and lien. Defendants were aware at that time that Mr. Alavarez [*sic*] had released the Note and Deed of Trust. Defendants filed a summary judgment, MSJ #5, making a claim that very Rule 11 provided him a release as well.

39.    In July 2019, a year after Mr. Alvarez executed the Rule 11, Mr. Alvarez executed and had filed a recordable release of lien as to the property in accordance with the Rule 11 settlement agreement.

40.    As such, Defendants as sophisticated real estate investors knew that after January 30, 2018, there was no "collateral" for Defendants' to claim as to any real property associated with 829 Yale. After July 2018, there were no liens on the property associated with any deed of trust. After July 2019, the Alvarez release was public record. None of this was fraudulent.

41.    All of Defendants' claims of fraud and fraudulent transfer were dismissed with prejudice by the October 2019 judgment.

42.    Defendants make false claims that Plaintiff lied to a court under oath however none of the Defendants ever observed or heard Plaintiff say anything to any court. Defendants were never in the court room and has [*sic*] no personal knowledge of any of the proceedings except his deposition. Instead, the transcript record reveals that Defendants' agent, Mr. Ramey, falsely told the Court that Plaintiff had violated the temporary injunction. When the Court examined the order, it determined no violation had occurred and never

proceeded with any hearing. In a subsequent hearing, the 190th Court has admonished Defendants' agent Mr. Ramey about making such misstatements about the proceedings. Defendants continue to falsely state what is objective on the record thereby defaming Plaintiff.

43.     [omitted; raised claims against a party that has been dismissed]

44.     Dolcefino defamed Plaintiff by claiming Plaintiff "setting up a fake trust to hide secret ownership" and Plaintiff "committed bribery to keep it secret" and a "shocking betrayal of a number of judges" as well as other false statements and innuendo in his July-August 2021 paid-for-hire-blog cast.

45.     Ramey drafted over a hundred pages of false and defamatory allegations against Plaintiff and then sent them to the State Bar of Texas and to Dolcefino and others as part of a smear campaign.

46.     Defendants made the false statement that An [*sic*] arbitration award on file in a 2012 case, 2012-27197A, was recently made public. Exhibit 184. The arbitration panel found that Kelley, Fraga, Choudhri, Parker, Pierce, and the other related cast of characters committed fraud in a very similar pattern on another property… [*sic*]

47.     Defendants labeled Plaintiff a "criminal" and claimed he was part of a "Yale Criminal Enterprise." Defendants published the following false defamatory accusations accusing Plaintiff of the following:

> Defendants claimed Plaintiff had engaged in "numerous state and federal felonies" and were "effectively "taking the fifth." Defendants claimed Plaintiff conspired to commit seventeen distinct scams" that were "all designed to steal the money loaned by [Defendants] and title to [Defendants]'s collateral, on fraudulent pretenses."

> Accused Plaintiff of "fraudulently induced and extorted Steadfast into a loan workout, for more funds."

> Accused Plaintiff of "stealing the lenders' money and invested it to bribe others to participate in additional schemes against the lenders and property.

> Accused Plaintiff of "fabricated sham entities to engage in interstate transactions, the Enterprise secretly owning or controlling all parties to all sides of these fake transactions."
>
> Accused Plaintiff of "fabricated fake tax liens to try to foreclose on the legitimate lenders. They recorded fraudulent releases of Steadfast's liens, created sham entities to pose as bona fide purchasers, and made illegal transfers of the collateral, all in furtherance of the Enterprise."
>
> Accused Plaintiff of "creating a fraudulent title abstracts omitting Steadfast's prior recorded Loan Documents to attempt insurance fraud and use the abstracts to support frivolous pleadings in vexatious litigation."
>
> Accused Plaintiff of "bribed [*sic*] witnesses to perjure themselves, bribed [*sic*] landmen, title companies, and other attorneys to participate in their schemes."

(Docket Entry No. 1.)

Again, it is clear to the Court that plaintiff's state law claims for defamation are not so related to his ECPA claims that they form part of the same case or controversy. To the contrary, plaintiff's ECPA claims and defamation claims are factually and legally unrelated. Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for defamation.

Further, in pleading his claims against the defendants for civil conspiracy, plaintiff alleges as follows:

> 49.    Pleading additionally, or in the alternative, Plaintiff would show that each Defendant was a member of a combination of two or more persons, the object of which was to accomplish an unlawful purpose, or a lawful purpose by unlawful means, the members had a meeting of the minds on the object or course of action, one of the members committed an unlawful, overt act to

further the object or course of action, and the Plaintiff suffered injury as a proximate result of the wrongful act.

(Docket Entry No. 1.)

To the extent plaintiff is raising a civil conspiracy claim as to his state law claims for tortious interference and/or defamation, the Court has declined to exercise supplemental jurisdiction over the tortious interference and defamation claims. Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's civil conspiracy claims against the defendants arising from the alleged tortious interference or defamation.

In the alternative, even assuming plaintiff's state law claims could be seen as so related to his ECPA claims that they form part of the same case or controversy, plaintiff's state law claims substantially predominate over his ECPA claims. Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c). *See Garcia v. City of McAllen*, 853 F. App'x 918, 920 (5th Cir. 2021).

For these reasons, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for tortious interference, defamation, and civil conspiracy (as relates to the tortious interference and defamation claims). Plaintiff's state law claims for tortious interference, defamation, and civil conspiracy (as relates to the tortious interference and defamation claims) are **DISMISSED WITHOUT PREJUDICE**.[2]

---

[2]Under 28 U.S.C. § 1367(d), "limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

The Court **RETAINS** supplemental jurisdiction under § 1367(a) as to plaintiff's claims arising under the TWA and any civil conspiracy claims arising from such claims, as such claims are so related to plaintiff's ECPA claims that they form part of the same case or controversy.

## II.  LEGAL STANDARDS

### A.    FRCP 56

Summary judgment is proper under Federal Rule of Civil Procedure ("FRCP") when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party is a full trial on the merits warranted." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017).

But where the movant bears the burden of proof at trial, the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020); *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).  "All reasonable inferences must be viewed in the light most favorable to the party opposing summary

judgment, and any doubt must be resolved in favor of the non-moving party." *In re La. Crawfish Producers*, 852 F.3d at 462.

It has long been the rule under federal law that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case. *See, e.g., Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) ("When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial."). The movant need not negate the elements of the nonmovant's case. *Austin*, 864 F.3d at 335. In these instances, however, the movant must "point[ ] out that there is no evidence to support a specific element of the nonmovant's claim"; rather than making "a conclusory assertion that the nonmovant has no evidence to support his case." *Id.* at 335 n.10.

B.   ECPA

The elements of a cause of action under the ECPA are straightforward. The ECPA generally prohibits the intentional interception, use, or disclosure of telephone communications without at least one communicating party's consent. 18 U.S.C. § 2511.[3] The ECPA also prohibits the intentional use of or disclosure to any other person "the contents

---

[3]"It shall not be unlawful . . . for a person . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception. . . ." 18 U.S.C. § 2511(2)(d).

of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c), (d). The ECPA authorizes the recovery of civil damages by "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).

### C. TWA

Similarly, the Texas Wiretap Act, TEX. CIV. PRAC. & REM. CODE § 123.002 *et seq.*, prohibits the intentional interception of a wire, oral, or electronic communication, as well as the intentional disclosure to another person of the contentions of a wire, oral, or electronic communication if the person has reason to know the information was obtained in violation of the statute. *See* TEX. PENAL CODE ANN. § 16.02(b)(1), (3). Texas provides a private cause of action for any "person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of" certain statutes including Chapter 16 of the Penal Code. *See* TEX. CODE CRIM. PROC. ANN. art. 18A.502(1).

## III.   THE FIRST MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the motion for summary judgment and/or dismissal filed by defendants Joseph Hibbard, Christopher Ramey, Scott Breitenwischer, and Marc Sherrin

("Movants") (Docket Entry No. 50; the "First Motion"),[4] and plaintiff's response in opposition. (Docket Entries No. 55, 57, 60.)

Movants seek dismissal of plaintiff's ECPA claims and state law claims. Because the Court has declined to exercise supplemental jurisdiction over plaintiff's state law claims for tortious interference, defamation, and civil conspiracy (as relates to the tortious interference and defamation claims), Movants' motion as to those claims is moot. Accordingly, the Court will address Movants' First Motion only as to the extent they request dismissal of plaintiff's ECPA claims, TWA claims, and any related civil conspiracy claims.

A.    Jurisdiction

As an initial consideration, the Court notes that Movants' challenge to the Court's diversity jurisdiction is groundless, as plaintiff clearly pleaded jurisdiction based upon a federal question – enforcement of the ECPA. (Docket Entry No. 1, ¶ 5.)

B.    One-Party Consent

Movants argue that Wyatt was a party to the telephone calls made the basis of plaintiff's lawsuit and lawfully recorded them and/or was authorized by non-party Ali Choudhri to record the calls. Thus, according to Movants, "Kelley's [w]iretap claim is

---

[4]The motion identifies the movants as defendants Hibbard, Ramey, Breitenwischer, and Sherrin. (Docket Entry No. 50, ¶ 1.) The motion also suggests that "Steadfast," "the Steadfast Defendants," and "the Steadfast Parties" are defendants, movants, or parties of interest. At one point, the motion even refers to "the Steadfast Courts." *Id.*, ¶¶ 1, 2, 31. No entity named "Steadfast" is a party to this lawsuit, nor are there any judicial entities known as "Steadfast Courts." These self-serving monikers are confusing, misleading, and unnecessary, and have been ignored by the Court.

conclusively disproved by unrebutted evidence that two call members consented to the recording" and there was no ECPA violation. (Docket Entry No. 50, ¶ 3.)

In support of their argument, Movants present an affidavit signed by Wyatt dated July 7, 2021. *Id.*, Ex. 267a, Ex. B. In the affidavit, Wyatt states in relevant part that on April 14, 2020, he was a participant in a telephone call that included Choudhri and plaintiff, and that he recorded the call at the express request of Choudhri. He further states that he was a participant in two subsequent telephone calls on January 13, 2020 and February 21, 2020 involving Choudhri, plaintiff, Michelle Fraga, and Brad Parker, and that he recorded those calls at Choudhri's express request.

In turn, plaintiff submits an affidavit of Choudhri, who testifies that he never gave Wyatt consent to tape any conversations Choudhri had with plaintiff, Fraga, or any other lawyers. Choudhri further testifies that Wyatt was never a party to any telephone conversation he had with Kelley and Fraga. (Docket Entry No. 57.) Thus, plaintiff has raised a genuine issue of material fact as to whether Wyatt was a participant in the subject calls or had Choudhri's express consent to record the calls, and Movants' motion for summary judgment dismissal of plaintiff's ECPA claims under their "one-party consent" argument is **DENIED**.

C.    Use or Disclosure

Plaintiff does not argue or allege that any of the named defendants in this lawsuit intercepted and recorded his telephone calls with Choudhri; he squarely alleges that the

subject recordings were unlawfully made by non-party Wyatt.  His ECPA claims against Movants are based on their alleged unlawful use or disclosure of the recordings to third parties.

To prevail at trial on his "use or disclosure" claims, plaintiff must establish that the Movants used or disclosed the recordings to another person knowing or having reason to know that the recordings were made in violation of the ECPA. 18 U.S.C. § 2511(1)(c), (d). As grounds for summary judgment, Movants argue that "even had Wyatt's recordings been illegal, it is undisputed that <u>Defendants</u>' use was perfectly legal," and that "Defendants could never have "had reason to know" that Wyatt's recordings were illegal, as required by 18 U.S.C. 2511(1)(c), (d)." (Docket Entry No. 50, ¶ 10, original emphasis.)[5]  Movants do not dispute that Ramey and Breitenwischer used or disclosed the recordings to other persons by filing the recordings or their written transcriptions in state and federal courts.

Movants contend that there is no evidence in the record establishing that they knew or had reason to know that Wyatt recorded the calls in violation of the ECPA.  Consequently, the burden of proof under FRCP 56 shifts to plaintiff to demonstrate by competent summary judgment proof that there is a genuine dispute of a material fact warranting trial as to whether Movants knew or had reason to know as of the time of their use or disclosure that the

---

[5]Inexplicably, Movants argue that, "More importantly, Plaintiff Kelly [*sic*] makes no allegation that the recordings were illegally used by <u>STEADFAST</u>." (Docket Entry No. 50, ¶ 6, original emphasis.)  The Court again points out that "Steadfast" is not a party to this lawsuit and Movants' use of the term is confusing and misleading.  Plaintiff plainly alleges in his complaint that the defendants – and thus the Movants – illegally used the recordings.  That plaintiff has not alleged that "<u>STEADFAST</u>" illegally used the recordings carries no significance.

recordings were made in violation of the ECPA. *Lyons*, 964 F.3d at 301–02; *Austin*, 864 F.3d at 335.

The Court's careful reading of plaintiff's response reveals no clear argument, much less probative summary judgment evidence, establishing that Movants knew or had reason to know at the time they used or disclosed the recordings that the recordings violated the ECPA. (Docket Entry No. 55.) Early on, plaintiff states that he will "lay[] out the manner in which Defendants acquired the tapes and the timing of Mr. Dolcefino being paid by Osama Abdullatif to confront Mr. Choudhri and Mr. Kelley with the tapes *knowing they were unlawfully obtained.* . . ." (Docket Entry No. 55, p. 2, emphasis added.) It is unclear whether plaintiff is alleging it was Dolcefino, Abdullatif, or both who knew the tapes were unlawfully obtained. The lack of clarity is largely academic, as neither of the individuals is a movant in the instant summary judgment motion.

The Court will defer from determining whether plaintiff has raised a genuine issue of material fact sufficient to preclude summary judgment at this time, as plaintiff has moved for time to take discovery under FRCP 56(d). (Docket Entry No. 50, pp. 11–16; Ex. C Lloyd Kelley Declaration.) The Court notes that prior to reassignment of this case to the undersigned judge, the original judge had stayed all discovery pending resolution of the defendants' motions to dismiss. (Docket Entry No. 59, pp. 52, 56.) The motions were not ruled on prior to transfer of the case, and discovery remained stayed as of the time of reassignment. The motions to dismiss have now been ruled on, and the parties have been

ordered to file a Joint Discovery/Case Management Plan and Agreed Scheduling/Docket Control Order by October 6, 2025.

Thus, the parties have not been able to undertake and complete discovery in this case, and plaintiff should be allowed to undertake discovery prior to being required to address the merits of Movants' motion for summary judgment as to this issue.

Movants' motion for summary judgment dismissal of plaintiff's ECPA claims predicated on their use and disclosure argument is **DENIED**. However, Movants may refile their motion for summary judgment as to this argument following closure of discovery but subject to motions deadlines to be imposed by the Court.

D.     "Litigation/Attorney Immunity"

Movants further argue that Ramey and Breitenwischer's use or disclosure of the recordings to various courts was protected by "litigation/attorney immunity" because they used or disclosed the recordings in context of litigation.  Movants have not filed an answer in this lawsuit and have not raised these affirmative defenses.  Nonetheless, had the defenses been pleaded in an answer, they lack merit.

Movants commence their argument by partially quoting testimony presented by plaintiff in a state court hearing *unrelated to the recordings*.  They quote plaintiff as stating, "I invite him (Ramey as counsel for Steadfast). . . walk over across the street, walk out of privilege (against being sued for filing the audiotapes) . . . . the reason I can't sue him . . . is, You can't do that. The law in Texas is clear. He's protected." *Id*., parenthetical commentary

18

added by Movants. Movants posit that plaintiff's testimony was an admission that Ramey and Breitenwischer are entitled to absolute immunity in using and disclosing the recordings to third parties through the courts. (Docket Entry No. 50, ¶ 23.)

The Court has reviewed plaintiff's actual testimony in the hearing transcript and notes that Movants have taken plaintiff's statement out of context and enhanced it with misleading and inaccurate parenthetical commentary. Plaintiff's actual testimony to the state court was as follows:

> I invite [Ramey], *if he thinks I committed a felony*, walk over across the street, walk out of the privilege, and then see what happens to him and his clients. But in here, the reason I can't sue him and the reason I'd love for him to sue me is, I know Judge Moore. $275,000 fine for a – for a client that su[ed] a lawyer.

> And by the way, I was not a party to any of that. I said, that – you can't do that. The law in Texas is clear. He's protected. *As long as he stands up here, and he can tell all the lies he wants, he's protected. Walk across the street, he's not.*

(Docket Entry No. 50, Ex. 271, p. 45, emphasis added.) It is clear from the totality of the hearing that plaintiff was referring to his inability to sue Ramey for saying plaintiff had committed fraud or a felony, because Ramey had made the statement in open court and the statement was protected. Plaintiff emphasized that Ramey would not be protected if he were to "walk across the street" beyond open court and accuse him of fraud or a felony. Plaintiff's testimony was not directed to Ramey's filing of the recordings in a court and did not constitute an admission that he could not sue Ramey and Breitenwischer for using or disclosing the recordings in violation of the ECPA.

Movant's bald claim that "[t]he filing of pleadings and evidence and motions in [c]ourt or in other proceedings is always absolutely privileged by complete immunity from suit," Docket Entry No. 50, ¶ 27, is incorrect and unsupported by current law. Movants fail to cite applicable authority for their argument that each act of filing the recordings in state or federal court cloaked Ramey and Breitenwischer with absolute immunity from plaintiff's claims that the disclosure violated the ECPA. Although Movants rely on *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015), they fail to mention or address the Texas Supreme Court's more recent rulings and clarifications of the common law attorney immunity doctrine set forth in such cases as *Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022*)*; *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65 (Tex. 2021); and *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40 (Tex. 2021). These latter decisions set forth the burden of proof required for application of attorney immunity, *see, e.g.*, *Haynes & Boone*, 631 S.W.3d at 78, and address the interplay between attorney immunity and wrongful or criminal acts of counsel. *See, e.g.*, *Taylor*, 644 S.W.3d at 645–650. Movants must meet their burden of proof as to the application of attorney immunity for each instance of their use and disclosure of the recordings. They have made no effort to do so.

While *Taylor* makes clear that common law attorney immunity can apply to TWA claims under certain circumstances, it forecloses application of the defense to plaintiff's ECPA claims in this case:

> We conclude that attorney immunity, as recognized and defined under Texas law, is not a defense under the federal wiretap statute because, quite simply, a state's common-law defense does not apply to federal statutes. Further considerations that support our conclusion include (1) the federal statute's plain language, (2) federal authority declining to recognize extra-statutory defenses and immunities, and (3) Taylor's failure to identify a federal common-law defense that aligns with Texas's attorney-immunity defense that federal courts are likely to apply notwithstanding the statute's plain language.

*Taylor*, at 653. These factors apply to the instant proceeding.

Movants' motion for summary judgment dismissal of plaintiff's ECPA claims predicated on litigation and/or attorney immunity is **DENIED**.

E.    Judicial Admissions/Waiver/ Estoppel/Res Judicata/Claims Preclusion

Movants claim entitlement to summary judgment dismissal of plaintiff's ECPA claims based on judicial admission, waiver, estoppel, res judicata, and claims preclusion, in that "[a]ll issues related to the tapes have already been litigated and lost by Kelley." (Docket Entry No. 50, p. 6.) They then represent to the Court that plaintiff waived his claims as he has "never contested the legality, authenticity or admissibility of the recordings." *Id.* at ¶ 30. The inherent inconsistency in these arguments – plaintiff litigated the issues and lost, plaintiff never raised the issues – is not explained or clarified by Movants. Again, Movants have not filed an answer in this lawsuit and have not raised these affirmative defenses. Nonetheless, even had the defenses been pleaded, they lack merit in this proceeding.

Movants have the burden to establish these defenses as a matter of law, and they fail to carry that burden. In lieu of probative summary judgment evidence, they proffer at best only contextual narrative and conjecture. Specifically, they do not direct the Court to any

probative summary judgment evidence that shows plaintiff judicially admitted that the recordings or their use and disclosure did not violate the ECPA, or that he affirmatively waived his ECPA claims or is estopped from raising claims for violation of the ECPA. Nor do they refer the Court to any final judgment or findings by any court that has ruled against plaintiff's ECPA claims in support of res judicata or claims preclusion.[6]

Movant's reliance on Exhibits 253 (Jetall's nonsuit of its state court lawsuit against Wyatt), 256 (Wyatt's motion to declare Jetall's state court lawsuit nonsuited with prejudice), 257 (Wyatt's state court response to Jetall's motion for contempt), B (Wyatt's affidavits as to his recording of Choudhri's telephone calls), B(c) (transcript of February 21, 2020 telephone call), and 237 (unsigned, undated supplemental memorandum of law as to legality and admissibility of Wyatt's recordings) (Docket Entry No. 50, ¶¶ 28–33) is misplaced, as these exhibits do not establish as a matter of law that plaintiff judicially admitted that the recordings were not made, used, or disclosed in violation of the ECPA, or that he has waived any argument or is estopped from contending that the recordings were made, used, and disclosed in violation of the ECPA, or that such claims are barred by res judicata or claims preclusion.

As "proof" that Kelley waived "the issue," Movants represent to the Court that "Wyatt and counsel even offered to make an independent forensic examination of the tapes:

---

[6]Movants represent to the Court that "[Kelley and his privies] litigated this issue in other cases and lost," citing to footnote 2. (Docket Entry No. 50, ¶ 13.) There is no footnote 2. They likewise direct the Court to footnote 3. *Id.*, ¶ 15. There is no footnote 3.

the [unnamed] parties objected, claiming that there is not a need for forensic examination of the tapes." They cite this fact as appearing in "Exhibit 270 at ppg. 25." (Docket Entry No. 50, ¶ 16.) Exhibit 270, a pleading filed in a state court case brought by non-party Jetall Companies, Inc. against non-party Wyatt, has no page 25. The Court will assume Movants were citing to paragraph 25 of the pleading, which is highlighted in their motion. However, the pleading made no mention of Kelley in paragraph 25; indeed, no mention of Kelley appears anywhere within the text of the motion. Movants fare no better in their argument that Kelley admitted the authenticity of the recordings by pleading in the instant lawsuit that "Wyatt . . . secretly recorded oral phone communications between Plaintiff and Choudhri." (Docket Entry No. 50, ¶ 16.) Plaintiff's allegation, pleaded as part of his ECPA and TWA claims, does not judicially admit the legality of any recording involved in this lawsuit, and provides Movants no basis for summary judgment dismissal of the ECPA claims.

Movants' motion for summary judgment dismissal of plaintiff's ECPA claims predicated on judicial admissions, waiver, estoppel, res judicata, and claims preclusion is **DENIED**.

F.    No Provable Damages

Movants next argue that plaintiff cannot prove damages for the alleged ECPA violations. Movants overlook the fact that the ECPA allows a court to assess as damages the greater of a plaintiff's actual damages or "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 28 U.S.C. § 2520(c)(2). Thus, as correctly

23

pointed out by plaintiff in his response, a plaintiff alleging ECPA violations may recover statutory damages even in absence of actual damages. (Docket Entry No. 55, pp. 8, 22, 40.)

Movants' motion for summary judgment dismissal of plaintiff's ECPA claims predicated on their "unprovable damages" argument is **DENIED**.

G.    Limitations Bar

Movants further seek summary judgment dismissal of plaintiff's ECPA claims predicated on expiration of the two-year statute of limitations. (Docket Entry No. 50, ¶ 34.) In support, they allege that the subject recordings were made in January, February, and April of 2020, and that in January 2021 plaintiff "worked with Jetall to harass Wyatt about the tapes." *Id.* Movants contend that the instant lawsuit, filed on July 1, 2022, is untimely.

Because Movants bear the burden of proof on their limitations defense, they must establish "beyond peradventure" all of the essential elements of the defense to warrant judgment in their favor. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The beyond peradventure standard imposes a heavy burden on the Movants to show there are no genuine material fact disputes and that they are entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court draws all reasonable inferences in favor of the nonmovant. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). The Court again notes that Movants have not filed an answer raising the affirmative defense of limitations.

24

Nevertheless, even assuming they had pleaded the defense, it would lack merit for purposes of the instant motion.

Under 28 U.S.C. § 2520(e), a civil action under the ECPA "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." Movants do not present, and make no effort to present, any probative summary judgment evidence establishing the date upon which plaintiff first had a reasonable opportunity to discover that they had used or disclosed the subject recordings to third parties. To the extent Movants allege that they first disclosed the recordings to a court on July 15, 2021, the docket shows that plaintiff filed this lawsuit on July 1, 2022, less than one year later. Movants fail to establish that plaintiff's ECPA claims are barred by the two-year statute of limitations.

Movants' motion for summary judgment dismissal of plaintiff's ECPA claims predicated on expiration of limitations is **DENIED**.

H.    Texas Wiretap Act Claims

Movants acknowledge that the elements of plaintiff's TWA claims are essentially the same as those for his ECPA claims, and they seek summary judgment dismissal of the TWA claims under the same arguments.

Movants' motion for summary judgment dismissal of plaintiff's TWA claims is **DENIED** for substantially the same reasons the Court has denied their motion as to plaintiff's ECPA claims.

I.      Civil Conspiracy Claims

The Court has retained supplemental jurisdiction over plaintiff's civil conspiracy claims to the extent they apply to his ECPA and TWA claims.  It does not appear that Movants have raised any separate grounds for summary judgment dismissal of the civil conspiracy claims, and the claims will be not addressed in this proceeding.

## IV.  THE SECOND MOTION FOR SUMMARY JUDGMENT

Pending before the Court is a second motion (the "Second Motion") for summary judgment.  (Docket Entry No. 83.)  The Second Motion, purportedly filed by "C.B. Ramey" and defendant Scott Breitenwischer, again seeks summary judgment dismissal of plaintiff's ECPA claims.  (Docket Entry No. 83, ¶ 3.)  Plaintiff Kelley filed objections to the Second Motion (Docket Entry No. 85).  Because there is no defendant named C.B. Ramey in this lawsuit, defendant Breitenwischer is deemed the movant in this motion.

Breitenwischer was a movant in the First Motion. In this Second Motion, he again moves for summary judgment dismissal of plaintiff's ECPA claims under the same arguments raised in the First Motion.  Although Breitenwischer expands his First Motion to include summary judgment dismissal of plaintiff's state law claims, the Court has declined to exercise supplemental jurisdiction over plaintiff's state law claims for tortious interference, defamation, and civil conspiracy (as relates to the tortious interference and defamation claims).  Breitenwischer's request for summary judgment dismissal of those claims is now moot.

Breitenwischer's First Motion for summary judgment dismissal of plaintiff's ECPA claims was pending at the time he filed his Second Motion, and the Second Motion is duplicative of the First Motion. Breitenwischer cannot argue that the second motion is an amended or supplemental motion for summary judgment, as he did not seek leave to file an amended or supplemental motion for summary judgment or show that the opposing party consented to the filing of such motion. *See* FED. R. CIV. P. 15. Additionally, Breitenwischer's pursuit of this second, concurrent motion for summary judgment seeking dismissal of plaintiff's ECPA claims unfairly allows him to circumvent the Court's page limitations as to briefing, requires plaintiff to respond twice to Breitenwischer's arguments, and unduly taxes the limited resources of this Court.

To the extent Breitenwischer raises a new argument that plaintiff failed to timely serve him under FRCP 4(m), the Court notes that Breitenwischer has made a general appearance in this lawsuit and his FRCP 4(m) argument warrants no relief at this late juncture.

For these reasons, the pending Second Motion for summary judgment (Docket Entry No. 83) is **ORDERED STRICKEN FROM THE RECORD**.

### V.  FRCP 4(m)

The Court's docket shows that defendant Joe Saenz has not been served with process in this lawsuit and has not filed an answer or made an appearance for general purposes. Plaintiff filed this lawsuit on July 1, 2022, did not serve Joe Saenz within ninety days thereafter, and did not request an extension of time to serve him.

27

Plaintiff's claims against Joe Saenz must be dismissed pursuant to FRCP 4(m). Plaintiff is **ORDERED** to show cause within **FIVE DAYS** from date of this order why Joe Saenz should not be dismissed from this lawsuit pursuant to FRCP 4(m).

## VI. WARNINGS

A.    <u>Professionalism</u>

Some of the parties and counsel in this case have appeared before the Court in other lawsuits.  The Court found it necessary in those lawsuits to order the parties to cease using derogatory and unprofessional language, name-calling, and other invective in their pleadings. The Court is disappointed to note that these unacceptable and unprofessional tactics have been continued in this lawsuit.  Not all parties or counsel in this lawsuit have succumbed to such tactics; nevertheless, these warnings apply to all parties and counsel.

Attorneys who practice before this Court are required to act as mature and responsible professionals, and the minimum standard is the Texas Disciplinary Rules of Professional Conduct.[7]  They are further required to adhere to the "Guidelines for Professional Conduct," Appendix D to the LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS.  These standards will be expected and enforced as to all pleadings, communications, and appearances by the parties and counsel in all cases before this Court.    The parties and counsel are **WARNED** that any future pleading or communication filed in this case that contains derogatory, inflammatory, or other

---

[7]*See* Rule 1(A), RULES OF DISCIPLINE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS.

unprofessional language, name-calling, or other invective, or that otherwise violates the "Guidelines for Professional Conduct," will be stricken from the record without further notice or opportunity to replead.

B.    Nomenclature

The parties are **ORDERED** not to refer to themselves, any party or parties, or non-party entities or individuals as "Steadfast," "Steadfast Defendants," "Steadfast Parties," or any other nomenclature involving the term "Steadfast" in any pleading or communication filed with this Court.  There is no party in this lawsuit named "Steadfast," and the parties' inconsistent references to "Steadfast" is confusing and misleading.

If any party intends to refer to a corporation, business, or other entity that uses the term "Steadfast" within its legal name or in regular business practice, the party must identify such entity by its full legal name and show cause why such reference is necessary.  Under no circumstances may any party use the term "Steadfast Court," "Steadfast Judge," "Steadfast Counsel" or any similar nomenclature in reference to judicial entities, personnel, lawsuits, or attorneys.  Any pleading or communication failing to comply with this order will be stricken from the record without further notice or opportunity to replead.

## VII.  CONCLUSION

The Court **ORDERS** as follows:

1.    Plaintiff's state law claims for tortious interference, defamation, and civil conspiracy (as relates to the tortious interference and defamation claims) are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

2.    The first motion for summary judgment and/or dismissal (Docket Entry No. 50) is **DENIED**.

3.    The second motion for summary judgment and/or dismissal (Docket Entry No. 83) is **ORDERED STRICKEN FROM THE RECORD**.

4.    Plaintiff is **ORDERED** to show cause within **FIVE DAYS** from date of this order why Joe Saenz should not be dismissed from this lawsuit pursuant to FRCP 4(m).

**THIS IS AN INTERLOCUTORY ORDER**.

Signed at Houston, Texas, on this the 24th day of September, 2025.


_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE